Good morning, your honors. My name is Bill Wolliger. You can still call the case. Oh, I'm sorry. We just have these little things we like to do. Nerves. They have a part here. Got it. Thank you. I apologize. Case number 14-3999. Case number 14-3999. Gas Natural Incorporated v. Richard Osborne. Or arguments not to exceed 15 minutes per side. Mr. Wolliger for the appellant. Now you're up. Thank you. Again, good morning. I'm Bill Wolliger. I'm from Cleveland, Ohio. I represent the appellant, Richard Osborne. I wish to reserve five minutes for rebuttal. I'm here today appealing an order that requires Richard Osborne to submit to the Securities Exchange Commission any letter he writes to a shareholder before he sends it, regardless of content, until such time as the Common Pleas Court of Lake County resolves a lawsuit between he and Gas Natural. The decision is a product of an analysis that was inappropriate. First of all, this is a regulation that governs proxies. And the rule regarding proxy is that no one has authority to issue a proxy for more than one meeting. So it would be a specific shareholder meeting. I don't want to cut you off. Go ahead. There are different aspects, and I'm not sure whether you're arguing all of them, but you've got the question whether that first letter is a solicitation. Yes. You've got the question whether if it is, it comes into the exception because it's not requesting a proxy. I do. And then you have the question whether there's irreparable harm. I'm sorry, what? Whether there's irreparable harm. Well, no, the applicable time period. Now, as I understand it, the judge dealt with the third issue differently than he might have had you not had this lawsuit. He did. Okay. So are you, which one or all of those are you arguing? And which are you stressing? Well, it's difficult for me to answer your question because I think the analysis is completely skewed, and I'll tell you why. The analysis must be backward, what's happened versus what could happen. So what has happened? The lawsuit is still pending. He didn't get a proxy for the 2014 election. That meeting came, and that board was elected. That's already passed. That's correct. But yesterday was the annual meeting, and they voted for another board. And incidentally, none of the members of the board that he was at issue with were reelected. They resigned. Everybody resigned. One did not run. Only two directors are currently on that board that were on that board that fired him right now. And it wasn't a proxy, and they weren't voted off. They quit. They resigned or didn't run. What's the point for Osborne? The point being is that there's more than one way to remove a director than through a proxy fight. This injunction looking forward, this judge looked at what was Osborne's intent on July 9th when he wrote that letter. It's an outmoded analysis, but even that July 9th letter could not be a solicitation, and here's why. You're saying it wasn't a solicitation at all. It was not. Okay, you don't even have to go to the exemption. That's exactly right. It wasn't a solicitation. The meeting was in a couple of weeks. He wasn't a nominee. He couldn't be a nominee. He couldn't get a proxy. His testimony was he's waged proxy fights. You do so by getting a proxy solicitor. He couldn't get his proxy solicitor. He wasn't in time to get on the ballot, and if you look at it backwards, his letter didn't affect anything. He wanted to have a proxy fight, though, didn't he? He did. He didn't do it, you're saying. That's what I'm saying. And this regulation regulates conduct, not thought, not intention. It wasn't that clear, but it seemed to me that the judge's reasoning was that, well, wait a minute. This isn't the normal case where you've already had the election. This is a case where he's trying to vacate that election. Yes. And so as long as that possibility is pending, you really are dealing with a continuous time period. No, you're not, and here's why. Okay. The rule applies to what shareholders do. The shareholders don't determine the lawsuit. The shareholders don't vote on the lawsuit. The shareholders vote on nominees for election. So the lawsuit, whatever, the shareholders can't affect the lawsuit, and the lawsuit can't affect the shareholders. The focus is wrong. And as a matter of. . . Go back to the basics here for a moment. Okay. Because you do have a lot of different issues. I do. Your focus now, I take it the relief you seek is a vacation or extinguishment of the injunction. Yes. And that helps your client because, I mean, I understand that it could be just as a matter of principle, but is your client seeking to. . . How is he harmed by this injunction remaining in place? Because he's been marginalized by the company. Is that it? Is it an ego thing? Because he's. . . The real issue was whether he was right or wrong or whether he sought a proxy and violated SEC rules right early on, and now it's about the injunction that's preventing him from doing some further work. Preventing him from communicating. So if it's your belief that you can constrain in some way future communications and then you judge that by the basis of, well, what do the communications lead to, then you get into some kind of gradation of judgment. But if you take the position, if you restrain speech, regardless of what is the motivation of the speaker, his opinions, his frustration, if you restrain speech, that has some adverse effect on people. Ordinarily, we don't have a restraint on speech. And so, yes, I am seeking to remove the order because the order. . . I thought your client was concerned with being found in violation of SEC rules. He has never been found in violation of SEC rules. If he were to seek a proxy, this is. . . If he doesn't. . . If he does that. If he seeks a proxy for an election in which he's written letters that are construed to be solicitation, those letters lose their exempt status. But until he does that. . . When is the next election? Well, they just had it yesterday. Okay, so there are periods in which this. . . And the problem with this order is it goes on beyond elections. It's now past the 2015 election. It's the definition of campaign. For the district court, campaign meant any time in the future, you know, election after election after election. Is this a kind of an injunction that courts talk about not to violate the law? Sort of, that's what it is. Say, don't violate the law. If your client doesn't violate the law, he doesn't have any problem even if it's in another solicitation for a proxy, right? But is it overbroad because it is that? It's overbroad because it doesn't even . . . It's not even limited to solicitations. See, if it's not a solicitation, it is a prior restraint on speech. Even their cases say that. So if you restrain non-solicitation speech, it is a prior restraint on speech. So this restrains all communications. We can argue whether or not . . . And one of the issues here, the trial court did not feel that materiality was an issue on whether or not the communication was calculated to procure a proxy. We say it is because if you look backwards, it didn't influence a single vote. It looks . . . If you read these letters, you wouldn't . . . It isn't the type of thing that you would get the impression this guy's upset. He's been fired. He's got an ax to pick. And it's embarrassing. Some of the information may be embarrassing to the people he's referring to. But the issue here is not a contention that what he's saying is untruthful. Well, can I just go back? Because I feel like there are a bunch of arguments here, and they're not all that clear to me. But you have the first letter, and you're saying it's not a solicitation. Yes. It seems to me that . . . And maybe there's some gray areas here. But you could certainly see that as a communication under circumstances reasonably calculated to vote to result in the, if not the procurement, certainly the withholding or revocation of a proxy. Yes. For what, Your Honor? It's the vote on July 30th. Let me finish. I'm sorry. You could certainly see it as that. Yes. So now you're in it. You're under the rules. You've got to follow everything. So then the question becomes, for what? And it also becomes whether you fall within the exception. So you look at the exception, and it looks like you're probably in there, at least to me. You're not requesting a proxy. And that means that you have to basically keep your hands out of it for the applicable period. And everything you say, again, would make sense if you look at these series of periods, except that there's this lawsuit. Now, you say the lawsuit doesn't affect the shareholders. The shareholders don't affect the lawsuit. But I think what the judge was saying is that if you are successful, you have extended the election period. Because your success would mean that you vacate that election, and you're in the middle of a period, of an election period. And that's what the judge was saying. Now, the problem that I have, and maybe this isn't the problem you have, is this safe harbor. Not the other safe harbor. Is the notion that you can make an election. And that's what I'd like to hear a little bit more about, even though your red light is on. But do you contend that even if you say that the July letter was a solicitation, and even if you extend the period because of this lawsuit, are you contending that your client, that the injunction was still inappropriate because your client has an option? Your client has the option to either pull himself out of one of those, of the exception, and then he's subject to the rules, and maybe can then be enjoined because he's already made an election. Or he can send whatever he wants as long as he doesn't actually ask for a proxy. And I don't know where you stand on that. Here's where I stand. It depends on what solicitation you're talking about. If you're talking about soliciting a revocation of a proxy for the 2014 election, your point would be correct. Now, when we get beyond that, what the judge's conclusion is, this was a communication calculated to revoke a proxy. You did it for the 2014 election. You didn't register it. Therefore, until this lawsuit is resolved, you can't write letters. Okay, and I think that we have your point because you're complaining about the length of time that your client will be restricted. Yes, I am, but I want to make a point about the lawsuit. No, okay, but why is the judge wrong to conclude that the potential for winning that lawsuit extends the period because? Because the request in the lawsuit was to vacate the 2014 election and conduct an election. That was the request. That election, new election has already occurred, but this restraining order isn't off. But your lawsuit is still pending. Yes, but the lawsuit can't affect the 2015 election. What happens if you win the lawsuit? All right, if I win the lawsuit, he gets reinstated as CEO of the company because he was fired improperly. And or the settlement agreement that we had is enforced, which I think is the most likely result. We have a part of our, the lawsuit is we settled all these claims. He agreed not to write any more letters. He withdrew from the board, and they breached the settlement agreement. And when they breached the settlement agreement, he wrote these vituperative letters because we couldn't restrain the meeting. He couldn't wage a proxy fight. Okay, question. You're attacking the 2014 election, which occurred after he was terminated, right? Yes. And so tell me how that is the consequence of winning that lawsuit. We don't challenge the 2015 election. That's the point. The 2015 election moots the claim to vacate or postpone the 2014 election because that can't be postponed. So then why, okay, why haven't you gone back to Judge Polster then at this point to vacate the injunction because of the change of circumstances? I am here because this order should never have been issued in the first place. All right. Okay. And that election. No more words. Thank you. Thank you. Good morning. My name is Christian Grostick. I'm here on behalf of Appali Gas Natural. I hope I can address the court's questions that were raised in the opening argument. I'd like to begin right at the beginning, which is were his letters solicitations. They were under the SEC rules and under every court's decision interpreting those rules because it was, because his first letter was a communication which constituted a step in a chain of communications designed by his own admission to ultimately accomplish the result of securing proxies. Did that first letter say anything about give me your proxy or give it to my representative or anything about, or did he send a form to fill out? No, it did not contain a proxy. Did it say proxy in that letter? No, it did not. It didn't even say it. It falls then within the third category, not a letter that secures a proxy or seeks a proxy, but a communication designed to lead to it. And it said in it, I'm asking for your help running these greedy individuals out of the company. How is it designed? Despite, like Judge Seiler, despite the testimony that confirms the intent, how is it asked for a thing? How is it a first step? It's really voicing discontent and kind of scurrilous, but where does it get to the point that it would qualify? Right. And voicing discontent with the current slate of directors and saying I'm going to ask you for your help running them out of the company is exactly what's happened in other cases where courts have found. That's where you get there. You say the words in the suggestion in there that I'm going to, it says I'm going to send you more letters. And I'm asking for your help running these greedy individuals. I'd like to run these greedy guys out. I'm asking for your help even, yes. But even short of that language, in other cases, courts have repeatedly held that when someone has made preparations to begin a proxy campaign, like requesting a shareholder list from the company on the grounds I want to solicit their support in a proxy campaign, which is what happened here. What's your best case on that? My best case is probably the Schwartzburg case out of the Southern District in New York, but also. Okay, district. Yes, but also the Barbash case out of the Second Circuit, where newspaper and radio advertisements criticizing management and urging citizens to replace it with a state-run utility constitute solicitations. Those didn't request a form of proxy. They were advertisements. But the court found, given the circumstances and given that it was clear that the company, like here, had begun preparations to do so, that those were solicitations under the third definition. And then the Schwartzburg case, which is very similar to this one. I'm just wondering about that case, whether or not anything came about beyond the advertisements in the paper. In other words, did this produce eventually a proxy fight? I actually am not sure off the top of my head. I know at the time the injunction was issued, they hadn't yet. That's all I know. But even if I find it very hard. I understand his testimony, but I think you have to look at the letter itself. I find it very hard to read that as a request for a proxy in his behalf or a suggestion even. I think it's definitely a suggestion that they not exercise a proxy or revoke an existing proxy in favor of the board. But either way, he doesn't actually solicit a proxy. And so why does he not fall within the exemption? The exemption. Right. Absolutely. And he never has. Right. And it's his choice. Right. And just analytically for my own self, I find it helpful to keep these two questions completely separate, right? Which is the first is, is it a solicitation under 14A1? And then the second is, even if it is, which is I believe your question, does it nonetheless fall under this exemption? And it doesn't here. And the reason, Schwartzberg discusses this at length. And the reason is what the SEC added to this to make a clarification. They added the words at any time during such solicitation. And what they said in the Federal Register was that we clarify this rule to make clear that someone has to make an irrevocable election to never solicit proxies during this period. He made, by his own testimony and by his own letters when he requested the shareholder list, the opposite election. He said, I'm going to solicit proxies. I'm not doing it yet, but I'm going to. And that takes him right out of there. He hasn't made that election. But then he should have been enjoined at best from soliciting a proxy. That's all. And it becomes a statement wagging a finger at him, make sure you don't solicit a proxy. Make sure you don't get yourself out of the exemption. But I don't see how then on what basis do you enjoin communications that do not pull him out of the exemption? Well, and I have two responses. The first comes back, and I know we keep floating to the same place, but the state court lawsuit, which is it's inconsistent with any even current representation, I'm not going to solicit proxies. When he has a pending claim for relief that says, I want the election that's occurred undone so that I can re-hold, and the court ordering a new election held, so that I can rerun, so that I can try to gain control of the company again. Is that what the lawsuit says? I want you to? The claim for relief is to void the election and order a new election held. Right, and that is completely different from, so that I can run. But his testimony was, so that I can run. And so that I can seek to gain control of the company. And his testimony, again, it was that. Let me ask you this, okay? A hypothetical person, they think they want to, they know they want to get rid of the management. They think they might like to get themselves in there instead. And so they ask for lists, and it becomes clear that that's just not an option. And so they write a letter writing campaign about how awful they are. And they also try to vacate the election. And it turns out that they never, they drop the idea of actually running. Or they keep it at the back of their head. But they're not doing, they're taking absolutely no act whatsoever to notify shareholders that they would seek, that this person would seek to be elected. So all you have is, you know, the ruminations of this particular person that are articulated, in this case, in the context of a deposition. But that's it. There's absolutely no, no shareholder has any idea that this person wants to do anything else but drive these people out. And it seems that the law allows that person to do it without going to the SEC. I think that's almost, that's almost what happened, except that he testified that the way to gain control of the company and the way to remove people and the way to gain a seat was through a proxy campaign. But we all agree with that. That's just kind of a basic corporation issue, isn't it? Yes. I mean, everybody knows that. I'm sorry. No, no. That's exactly right, Judge Seiler. And that's what his testimony was. He understands that as well. Are you saying that anybody who wants to take over a corporation who writes some kind of innocuous letter is violating this law? If someone's aim is to take over a corporation and they write letters criticizing management, what are typically called fight letters, preparing the way to eventually send proxies, and they don't register, they don't send a copy to the SEC, then, yes, they violated the law. And that's, the law requires them to send a copy to the SEC. It doesn't say they can't do it. It doesn't say they can't send these letters. It requires them to send a copy and fill out a cover sheet. And that's, I mean, Mr. Osborne's done that twice since the injunction was issued. We have no complaint with that, obviously, because it follows the law. But it permits the SEC to monitor what's happening and to regulate the elections. And, again, I know we're shifting grounds from time to time here. So is this period extended indefinitely? I mean, when do you decide that the landscape has sufficiently changed? Yeah, and that's exactly where I was going to go, because I think that's the key question. Judge Polster focused on as long as you're requesting this relief in state court to redo this election, you're effectively still focusing on the same election. We're still having this claim. That election's passed. That election, the actual election is passed, and we don't know whether the state court will order it re-held or not. But until the state court does decide that one way or another, Mr. Osborne is saying, I'm seeking to re-hold this election so that I can gain corporate control. But they've had a second election. They have. They have. And they're going to have another one next year. They will have another one next year. And that's where it really leaves the option up to Mr. Osborne, though. He can come into state court this afternoon, if he wants, and file something saying, I'm dismissing that claim for relief. And the injunction is dissolved on its terms. But until he does that. Your injunction in this case is dissolved? By its terms. Judge Bolster says, so long as you're maintaining that state court action, wherein you're seeking this relief, this injunction stays. Once you stop, I mean, it can be resolved lots of ways. The state court can make the decision. He can come in and dismiss that claim for relief. He can do all sorts of other things. It dissolves on its terms. It's done. Now you've had the 15th election. Yes. Which he's not seeking to set aside. Yes, correct. So why does that not cut the whole thing off? Because even if they vacate the 14th election, he may get some sort of relief. But it's not going to be a new election. And it's only the possibility of a new election that led Judge Bolster to do this. That's right. I think that's the trickiest question of the case right now. And it's one thing I would dispute in your question, which is the assertion that the state court won't order a new election held. I believe that's true. But until, if Mr. Osborne believes that's true also, he can dismiss his claim for that relief, and then the injunction dissolves. Until the state court rules that that's not true, it's still open. He's still requesting that the state court order a new election held. And it seems to me the only way that this court could find the injunctions essentially over is to find that the state court will not or cannot order that relief. And I'm not sure that this court has the power to do that. It's a tricky question. I absolutely agree, and I've pondered it myself. Are you saying that the election was not available to him once he wrote the July 9th letter? The exemption? The exemption, yeah. The irrevocable election is what I'm saying. Right. What I'm saying is that he could make an express election at that point, I'm no longer seeking to solicit proxies at all. If he did that expressly, he could then rely on the exemption going forward. But he didn't do that by his own testimony, but also his state court lawsuit is inconsistent with any claim that he would. Why is a state court lawsuit trying to vacate an election the equivalent of I want to vacate? And when you refer to it, you say I want to vacate the election and retake control. But I don't get why that clause automatically gets appended. Right, fair enough. It's two things that it says explicitly, and then I'm appending one. It's vacate the election, order a new election held. And I'm adding so that I can seek to gain control. I know, but that's the crucial. I say that for two reasons. One is his testimony. The second is otherwise the relief is meaningless. To order a new election held so that it can be uncontested again is meaningless. It's meaningless. And this is where the district court making the factual findings about what these things mean certainly didn't commit clear error in finding that he was seeking to eventually contest that election should he prevail in state court. That's where we could offer different interpretations, but the district court, to me, the most persuasive interpretation of that relief is, even aside from his testimony, is so that I can contest the election because otherwise it's meaningless to just re-hold the same election again uncontested. And certainly when we add this court's review for his factual findings as clear error, the district court didn't clearly err in making that determination. Did the district court find there was irreparable harm in this case? The district court didn't make an explicit finding of irreparable harm. He did find that... Didn't it require to do so in a... Well, he found the facts that established irreparable harm, which is that he had repeatedly violated the SEC rules and that going forward he was likely to do so. He testified explicitly, I intend to continue to solicit. And under case law that we both cite, the Gitlin case, the Schwarzberg case again, defendants cite SEC versus Bausch and Lomb, and the Winninger case, under all those cases a likelihood, a high likelihood of future violations is sufficient to establish irreparable harm in this context given that the only requirement is that he file a copy with the SEC. So which was the testimony that you said he intended to continue to solicit proxies? He didn't say he intended to continue to solicit proxies. What he said is I intend to continue to tell shareholders, to communicate these things to shareholders. But none of that is asking for a proxy. He testified that he wanted to regain control of the company, that the way to do that was a proxy contest. That's pages 13 to 14 of the transcript. And that he intended to continue. To do that, he needed to tell the shareholders why he thought the directors were bad, and so that's what he was doing. And that second part is at pages 24 and 25 of the transcript. And when was that taken? The deposition? October 10th, give or take a week. I'm sorry, I can check. Of 2014. Of 2014, that's correct. Thank you. Mr. Williger. The actual relief that he's seeking in the lawsuit in Lake County is to conduct an election of directors no later than February 2015. That was the relief he asked for. How is that in our record? The lawsuit, I believe, is an exhibit. I mean, the lawsuit is an exhibit? What's an exhibit that we can confirm what you just said? I'm not sure. The irreparable harm on pages 47 and 48 and 64 and 65 of the transcript, the court would not entertain any questions on that issue, on irreparable harm. He felt it was irrelevant, that the issue was, did he write this? Was he engaged in a campaign? His focus was campaign, and they distort campaign to mean forever. When the plain language of these regulations is the campaign is for the particular vote. Thank you. Thank you. The court has your matter. We will consider the case carefully and will issue an opinion in due course. Thank you.